UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------x

MILLENNIAL ENTERTAINMENT GROUP LLC
and LENA ROMANOVA,

Plaintiffs,

-against-

BROOKLYN EAGLE, LLC, BROOKLYN EAGLE DIGITAL,
LLC, BROOKLYN PUBLIC MEDIA, LLC, SCOTT ENMAN,
and PAMELA BARSKY,

Defendants.

---------------------------------------------------------------------------x

**COMPLAINT**
**and JURY DEMAND**

DOCKET NO._____

Plaintiffs MILLENNIAL ENTERTAINMENT GROUP LLC ("Millennial") and LENA

ROMANOVA ("Romanova"; collectively with Millennial, "Plaintiffs") by their attorneys Cuddy

& Feder LLP, as and for their Complaint against Defendants BROOKLYN EAGLE, LLC

("Eagle"), BROOKLYN EAGLE DIGITAL, LLC ("Digital"), BROOKLYN PUBLIC MEDIA,

LLC ("Media"; collectively with Eagle and Digital, the "Eagle Defendants"), SCOTT ENMAN

("Enman"), and PAMELA BARKSY ("Barsky"; collectively with the Eagle Defendants and

Enman, the "Defendants"), respectfully allege as follows:

**The Parties**

1.      Plaintiff Millennial is a domestic limited liability company, with an address

of 387 Park Avenue South, 5th Floor, New York, New York 10016.

2.      Plaintiff Romanova is a domiciliary of the State of Nevada, with an address

of 2857 Paradise Road, Unit 1705, Las Vegas, Nevada 89109, and is the sole member, CEO, and

President of Millennial.

3.      Defendant Eagle is, upon information and belief, a domestic limited liability

4290725.v3

company with an address of 16 Court Street, 30th Floor, Brooklyn, New York 11241.

4.     Plaintiffs' diligent efforts to discover the identity and citizenship of the member(s) of Eagle have failed.

5.     Defendant Digital is, upon information and belief, a domestic limited liability company with an address of 16 Court Street, 30th Floor, Brooklyn, New York 11241.

6.     Plaintiffs' diligent efforts to discover the identity and citizenship of the member(s) of Digital have failed.

7.     Defendant Media is, upon information and belief, a domestic limited liability company with an address of 16 Court Street, 30th Floor, Brooklyn, New York 11241.

8.     Plaintiffs' diligent efforts to discover the identity and citizenship of the member(s) of Media have failed.

9.     Upon information and belief, with the Eagle Defendants' places of business being located in the State of New York, County of Kings, and the nature of their publication relating to subjects and events in such State and County, the members of the Eagle Defendants are citizens of the State of New York.

10.     Defendant Enman is, upon information and belief, a domiciliary of the State of New York, with an address of c/o Brooklyn Eagle Digital, LLC, 16 Court Street, 30th Floor, Brooklyn, New York 11241.

11.     Defendant Barsky is, upon information and belief, a domiciliary of the State of New York, with an address of 34 Avenue A, #3, New York, NY 10009.

**Jurisdiction and Venue**

12.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1), because the amount in controversy with respect to Plaintiffs' legal and equitable

claims, independently, exceed the sum of $75,000, exclusive of interest and costs.

13.     For the purposes of diversity of citizenship, Plaintiffs Millennial and Romanova are citizens of the State of Nevada.

14.     The sole member of Millennial is Romanova, who is a domiciliary and citizen of the State of Nevada, having a residence of 2857 Paradise Road, Unit 1705, Las Vegas, Nevada 89109. Accordingly, for purposes of diversity of citizenship, Millennial has the citizenship of the State of Nevada.

15.     Defendants transact business within the territorial confines of the Eastern District of New York. The events complained of herein took place within this judicial district.

16.     Further, the Eagle Defendants are subject to the Court's personal jurisdiction with respect to this civil action, Defendant Enman resides in this District, and all Defendants are residents of New York State.

17.     Accordingly, venue exists in this district in that the requirements of 28 U.S.C. § 1391 are satisfied as set forth above and the Court has jurisdiction over Defendants.

**Facts Common to all Claims for Relief**

18.     This action arises out of (i) a series of false, defamatory statements published by Defendants, which constitute defamation *per se* or, in the alternative, (ii) statements which gave rise to false suggestions, impressions and implications with respect to which libelous intendment would naturally be given to them, (iii) the breach of the implied covenant of good faith and fair dealing in a license agreement between Millennial and Barsky entered into on June 15, 2018 (the "Barsky Agreement"), and (iv) Defendants' tortious interference with a June 15, 2018 license agreement between Millennial and non-parties the Brooklyn Institute of Arts and Sciences, d/b/a Brooklyn Museum, the Brooklyn Botanic Garden, and Eastern Parkway Car Park, LLC (the

"Winterfest Agreement" with the "Non-Party Licensors"), as well as agreements with other vendors, suppliers, and contractors.

19.     Plaintiffs organize and develop high-quality, museum-grade attractions targeted to modern and connected visitors all over the globe.  One such attraction was entitled "Winterfest," which was an outdoor winter festival that combined a holiday market with winter-themed attractions and activities ("Winterfest") in Brooklyn, New York.  The holiday market portion of the attraction featured vendors selling unique crafts and goods.  Pursuant to the Winterfest Agreement, Millennial entered into an agreement with the Non-Party Licensors to host Winterfest in the area adjacent to the Brooklyn Museum at 200 Eastern Pkwy in Brooklyn, during November and December 2018.

20.     The Winterfest Agreement provided for two routine annual renewals for 2019 and 2020.

21.     But Defendants' defamatory statements, set forth in detail below, sabotaged any chance of Winterfest becoming an annual event, and interfered with the relationship between Plaintiffs and the Non-Party Licensors to the point where the Winterfest Agreement was terminated.

22.     Additionally, in making these statements, Defendant Barsky breached the Barsky Agreement.

23.     Defendants' statements deeply undermined Winterfest and damaged Plaintiffs' personal and professional reputations, and Plaintiffs are accordingly seeking the proper relief as a result.

**First Claim for Relief**
**(Defamation *Per Se*)**

24.     Plaintiffs repeat and reallege all prior allegations set forth in this

Complaint as if set forth herein verbatim.

25.     Both during and after Winterfest, one or more of the Defendants made the following false statements, published without privilege or authorization of Plaintiffs, to third parties.

26.     The publishing of these statements constituted fault as judged by, at a minimum, a negligence standard.

27.     The following statements were of and concerning Plaintiffs, exposed Plaintiffs to, *inter alia*, public contempt, ridicule, aversion, or disgrace, and injured Plaintiffs in their business, trade or profession:

28.     On December 2, 2018, the following defamatory quote by Barsky was published in a story by the publication The New York Post:

> Pamela Barsky, a veteran of the city's holiday markets who sells small bags with quirky sayings, closed her booth on Tuesday and took her concerns to the Brooklyn District Attorney's office. "Everybody got scammed," she said.

29.     On December 3, 2018, the following defamatory quote by Barsky was published in a story by the publication The Gothamist:

> The other vendor who dropped out, Pamela Barsky, said she had taken her concerns to the Brooklyn District Attorney's office. "Everybody got scammed," she added.

30.     On December 7, 2018, the following defamatory quote by Barsky was published in a story by publication The Gothamist:

> One of them, Pamela Barsky, told Brooklyn Daily that she paid more than $6,000 to sell bags inside faulty stalls, which she claimed constantly leaked and lost electricity.

"This wasn't just disorganized, I think they had every intention of scamming everyone," she said, adding that sells her bags at similar bazaars across the city with no hitch.

31. On December 13, 2018, the following defamatory quotes by Barsky were published in a story by non-party publication The Bklyner:

Pamela Barsky, an NYC-based maker of canvas bags featuring witticisms, said the moment she arrived she noticed problems with electrical power, including no power at all during 12 hours of set up.

Barsky immediately complained to Lena Romanova, whose company Millennial Entertainment organized the event. "As soon as I met her I complained. She then blamed me for all the problems and later sent out a letter to all other vendors saying bad things about me," Barsky said.

Back in Brooklyn, Barsky has filed a complaint with the Brooklyn District Attorney's office. She says she contacted the DA's office "as soon as I read the article about Boston chasing [Romanova] for money."

"I hope she goes to jail," she said. "I don't like being misled and cheated."

32. On December 14, 2019, the Eagle Defendants caused to be published the following false, defamatory statements in a story contained in their newspaper and website:

Peeved patrons and vendors are likening the failed holiday attraction to a scam.

It's not only customers who are feeling cheated by the Winterfest holiday attraction behind the Brooklyn Museum.

Some vendors, who paid thousands to sell their wares at the temporary marketplace, also say they are feeling scammed by Winterfest's organizers.

The press release announcing its opening said the space, which is normally part of a parking lot, would feature shopping, entertainment, a Santaland, a slide, a large menorah, a giant snow globe, a tree maze and more.

From the beginning, customers complained that Winterfest did not contain either the promised slide or the snow globe and that a "Chocolate Experience" was actually a tent that served instant cocoa and Halloween candy, Bklyner reported.

> For example, Pamela Barsky, a maker of novelty canvas bags, said that from the time she arrived, she noticed problems with electrical power, including "no power at all during 12 hours of set up," Bklyner said.

33.     On December 14, 2018, the following defamatory quote by Barsky was published in a story by the Eagle Defendants:

> For example, Pamela Barsky, a maker of novelty canvas bags, said that from the time she arrived, she noticed problems with electrical power, including "no power at all during 12 hours of set up," Bklyner said.

34.     On December 18, 2019, Enman, writing for the Eagle Defendants, caused to be published the following false, defamatory statements in a story contained in the Eagle Defendants' newspaper and website:

> Winterfest Fiasco: Organizers ignore refund requests from customers.
>
> Is Winterfest Brooklyn's version of Fyre Festival?
>
> A photo depicting the Winterfest grounds as vacant and with tress and other materials blown over, with the photo taken after a powerful rain and wind storm had just slammed New York, with the caption: "Winterfest, the advertised 40,000-square-foot 'world of holiday joy and wonder' behind the Brooklyn Museum has turned out to be anything but merry, according to customers and vendors."
>
> What was advertised as a 40,000-square-foot "world of holiday joy and wonder" behind the Brooklyn Museum has turned out to be anything but merry, according to peeved patrons and vendors, who likened the failed holiday attraction to a scam.
>
> "If I'm not getting my refund," she added, "I'm sure that means a lot of other people aren't either."
>
> A photo with the caption: "Here's a look inside the empty Winterfest grounds."
>
> Winterfest, which opened on Nov. 23 and is scheduled to run through Dec. 31, promised shopping, entertainment, a Santaland, a slide, a large menorah, a giant snow globe and a tree maze.
>
> Winterfest initially sold $20 tickets simply to enter the grounds, but the event is now free, causing customers like Montalto to demand reimbursement.

Despite the museum's response, customers like Montalto have had their refund requests fall on deaf ears.

35.     On December 20, 2018, the following defamatory quote by Defendant

Barsky was published in a story by the Eagle Defendants:

> For example, handbag vendor Pamela Barsky said the vendors' stalls constantly leaked and lost electricity.

36.     On December 28, 2018, the following defamatory quotes by Defendant

Barsky were published in a story by non-party Patrick Smith, writing for non-party publication

The Bridge:

> "This wasn't just disorganized, I think they had every intention of scamming everyone," Barsky told Brooklyn Daily. "It was like kindergartners trying to set up a show."

> Barsky said she complained about the power outage directly to Lena Romanova, CEO of the company that organized the event. "As soon as I met her I complained. She then blamed me for all the problems and later sent out a letter to all other vendors saying bad things about me," Barsky told Bklyner.

37.     On January 30, 2019, Enman, writing for the Eagle Defendants, caused to

be published the following false, defamatory statements in a story contained in the Eagle

Defendants' newspaper and website:

> Winterfest organizer Lena Romanova allegedly used alias to harass vendors and patrons.

> Millennial Entertainment Group spokesperson "Jennifer Crosby" is fake, merchants say.

> Lena Romanova, organizer of the botched Winterfest holiday market now facing scrutiny from the Brooklyn district attorney, used a fictitious spokesperson named "Jennifer Crosby" to harass vendors and the press as the event unraveled, according to business owners who took part in the event.

> "There is no Jennifer," said Jeff Golden, owner of Bear Hands & Buddies and a merchant at Winterfest, which was organized by Millennial Entertainment Group. "Jennifer was Lena; it was her alter ego."

But Crosby was no more than an email address that provided Romanova anonymity to bully vendors when the festival collapsed, merchants told the Brooklyn Eagle.

One Winterfest merchant shared an email with the Eagle in which Crosby said the agreement was terminated for "making noise and false allegations." The merchant later arrived at her booth to find the shop's electricity outlets boarded up.

A photo with the caption, "One vendor arrived at her market chalet to find the shop's electricity outlets boarded up."

Other vendors pleaded with the Brooklyn Museum for help: "We [and] the rest of the vendor[s] fear for our personal safety and the safety of our store," Johanna Guevara-Smiley wrote. "We sincerely ask for extra security these following holidays," she added.

Another vendor told the Eagle, "I did not feel safe there."

"The first-ever email I had from Millennial Entertainment Group, I got a response from Lena even though I sent it only to Jennifer," said one vendor who asked to remain anonymous for fear of legal retribution. "We really don't think she's real. We think it's a front."

A photo with the caption: "Vendors complained that Crosby harassed them, and many feared for their safety."

"We got an email that was very much in Lena's voice, and that was the moment it clicked for me that Jennifer was Lena," said another vendor who also asked to remain unidentified.

Crosby may not be the only fictitious person associated with Winterfest.

Another employee, Zane Friedman, is listed on Millennial's website as director of sales and sponsorships — but Friedman also has no digital footprint beyond a LinkedIn profile. A search for similar images on the internet revealed Friedman's profile photo is actually an image of Swedish model Frida Gustavsson.

Members of the press were not spared from Millennial's attempts to intimidate.

The market, which was advertised as a 40,000-square-foot "world of holiday joy and wonder," collapsed after several promised attractions proved underwhelming and others were absent entirely.

For example, the event did not feature an advertised snow globe or slide.

Vendors complained of a lack of electricity in their booths, as well as rat and roach problems, and the organizers used bullying tactics.

Some attendees began comparing the event to the now infamous Fyre Festival.

When the event was cut from six to four days per week, many merchants asked for refunds, but their requests received no response.

Attendees also demanded reimbursement to no avail after attractions they initially paid for were later offered for free.

38.     On January 30, 2019 and, upon information and belief, continuously thereafter, Enman posted and published on his Twitter page the following false and defamatory statements concerning Plaintiffs:

Winterfest scams vendors/patrons out of money;

Winterfest invents worker to harass vendors/patrons; and

Winterfest fabricates ANOTHER employee who is actually a Swedish model.

39.     In or about January 2019, Enman, writing on the social media website Twitter, caused to be published the following false, defamatory statements:

Winterfest could be #Brooklyn's own version of Fyre Festival.  Hopefully these customers get the reimbursement they fully deserve.

40.     On January 31, 2019, Enman retweeted and published the following sexist, revolting tweet originally posted by an individual using the name "Thomas Attila Lewis":

"What sex act was she willing to perform in order to get the beer hut up."

41.     This tweet and retweet imputed unchastity to Romanova and is defamatory *per se*.

42.     On January 31, 2019, Enman retweeted and published the following false, defamatory statements originally tweeted and published by an individual using the name "Marc

McDonald": "I'm biased by Trump's associations, I'm sure, but I feel like nobody has embraced scam capitalism quite like the russians have."

43.     On February 1, 2019 and, upon information and belief, continuously thereafter, Enman posted and published on his Twitter page the following false and defamatory statement concerning Plaintiffs:

> Organizers likely made at least $103,333 from vendors losing money when the event was shortened from 6 to 4 days per week based on booth costs. It's difficult to find out how many patrons paid and didn't get refunds, so number could be higher.

44.   Upon information and belief, Enman syndicated his defamatory *per se* articles with Patrick Smith of the "Bridge" and Ben Yakas of the "Gothamist" to ensure maximum distribution and exposure online.

45.   The above statements are defamatory *per se*, as they were designed to (and did) hurt Plaintiffs' business, trade and profession.

46.   As a direct and proximate result of Defendants' intentional and malicious publication of false and defamatory statements, Plaintiffs have been and will continue to be damaged in an amount to be determined at trial, but believed to be in the sum of at least $10 million.

## Second Claim for Relief
### (Defamation)

47.   Plaintiffs repeat and reallege all prior allegations set forth in this Complaint as if set forth herein verbatim.

48.   Specifically, Plaintiffs incorporate by reference in this Claim for Relief all excerpted statements set forth in the First Claim for Relief (¶¶ 28-43) (the "Defamatory Statements").

49.   Both during and after Winterfest, one or more of the Defendants made the

Defamatory Statements, published without privilege or authorization of Plaintiffs, to third parties.

50.     The publishing of the Defamatory Statements constituted fault as judged by, at a minimum, a negligence standard.

51.     The Defamatory Statements were of and concerning Plaintiffs and exposed Plaintiffs to, *inter alia*, public contempt, ridicule, aversion, or disgrace.

52.     In the alternative, if the Court should deem the Defamatory Statements not to be defamatory *per se* as set forth in the First Claim for Relief, even though they tend to injure Plaintiffs in their trade, business, or profession, Plaintiffs have suffered special damages as a result of the publication of the Defamatory Statements.

53.     These special damages include: (a) loss of revenue from the 2018 Winterfest, (b) loss of revenue from the 2019 and 2020 Winterfests as provided by the Winterfest Agreement, and (c) loss of future business opportunities.

54.     The total sum of the special damages caused by the Defamatory Statements are at least $10 million.

### Third Claim for Relief
### (Defamation by Implication)

55.     Plaintiffs repeat and reallege all prior allegations set forth in this Complaint as if set forth herein verbatim.

56.     Plaintiffs further incorporate all the excerpted quotations above, and allege, in the alternative, assuming *arguendo* any of the statements above are not defamatory *per se*, that they give rise to false suggestions, impressions and implications with respect to which a libelous intendment would naturally be given to them.

57.     Along with the statements set forth above, these additional statements below constitute defamation by implication:

58.     On December 7, 2018, the following defamatory quote by Defendant

Barsky was published in a story by non-party publication The Gothamist:

> One of them, Pamela Barsky, told Brooklyn Daily that she paid more than
> $6,000 to sell bags inside faulty stalls, which she claimed constantly
> leaked and lost electricity.

59.     On December 13, 2018, the following defamatory quotes by Barsky were

published in a story by non-party publication The Bklyner:

> Pamela Barsky, an NYC-based maker of canvas bags featuring witticisms,
> said the moment she arrived she noticed problems with electrical power,
> including "no power at all during 12 hours of set up."

60.     On December 14, 2019, the Eagle Defendants caused to be published the

following defamatory statements in a story contained in the Eagle Defendants' newspaper and

website:

> For example, Pamela Barsky, a maker of novelty canvas bags, said that
> from the time she arrived, she noticed problems with electrical power,
> including "no power at all during 12 hours of set up," Bklyner said.

61.     On December 14, 2018, the following defamatory quote by Defendant

Barsky was published in a story by Defendant the Eagle:

> For example, Pamela Barsky, a maker of novelty canvas bags, said that
> from the time she arrived, she noticed problems with electrical power,
> including "no power at all during 12 hours of set up," Bklyner said.

62.     On December 18, 2018, Enman, writing for the Eagle Defendants, caused

to be published the following defamatory statements in a story contained in the Eagle

Defendants' newspaper and website:

> Winterfest Fiasco: Organizers ignore refund requests from customers.

> Is Winterfest Brooklyn's version of Fyre Festival?

> A photo depicting the Winterfest grounds as vacant and with tress and
> other materials blown over, with the photo taken after a powerful rain and
> wind storm had just slammed New York, with the caption: "Winterfest,

the advertised 40,000-square-foot 'world of holiday joy and wonder' behind the Brooklyn Museum has turned out to be anything but merry, according to customers and vendors."

What was advertised as a 40,000-square-foot "world of holiday joy and wonder" behind the Brooklyn Museum has turned out to be anything but merry, according to peeved patrons and vendors, who likened the failed holiday attraction to a scam.

"If I'm not getting my refund," she added, "I'm sure that means a lot of other people aren't either."

A photo with the caption: "Here's a look inside the empty Winterfest grounds."

Despite the museum's response, customers like Montalto have had their refund requests fall on deaf ears.

63.     On December 20, 2018, the following defamatory quote by Defendant Barsky was published in a story by Defendant the Eagle:

For example, handbag vendor Pamela Barsky said the vendors' stalls constantly leaked and lost electricity.

64.     On December 28, 2018, the following defamatory quotes by Barsky were published in a story by non-party Patrick Smith, writing for non-party publication The Bridge:

Barsky said she complained about the power outage directly to Lena Romanova, CEO of the company that organized the event. "As soon as I met her I complained. She then blamed me for all the problems and later sent out a letter to all other vendors saying bad things about me," Barsky told Bklyner.

65.     On January 30, 2019, Enman, writing for the Eagle Defendants, caused to be published the following defamatory statements in a story contained in the Eagle Defendants' newspaper and website:

Millennial Entertainment Group spokesperson "Jennifer Crosby" is fake, merchants say.

But Crosby was no more than an email address that provided Romanova anonymity to bully vendors when the festival collapsed, merchants told the Brooklyn Eagle.

One Winterfest merchant shared an email with the Eagle in which Crosby said the agreement was terminated for "making noise and false allegations." The merchant later arrived at her booth to find the shop's electricity outlets boarded up.

A photo with the caption, "One vendor arrived at her market chalet to find the shop's electricity outlets boarded up."

Other vendors pleaded with the Brooklyn Museum for help: "We [and] the rest of the vendor[s] fear for our personal safety and the safety of our store," Johanna Guevara-Smiley wrote. "We sincerely ask for extra security these following holidays," she added.

Another vendor told the Eagle, "I did not feel safe there."

"The first-ever email I had from Millennial Entertainment Group, I got a response from Lena even though I sent it only to Jennifer," said one vendor who asked to remain anonymous for fear of legal retribution. "We really don't think she's real. We think it's a front."

A photo with the caption: "Vendors complained that Crosby harassed them, and many feared for their safety."

Crosby may not be the only fictitious person associated with Winterfest.

Another employee, Zane Friedman, is listed on Millennial's website as director of sales and sponsorships — but Friedman also has no digital footprint beyond a LinkedIn profile. A search for similar images on the internet revealed Friedman's profile photo is actually an image of Swedish model Frida Gustavsson.

Vendors complained of a lack of electricity in their booths, as well as rat and roach problems, and the organizers used bullying tactics.

Some attendees began comparing the event to the now infamous Fyre Festival.

When the event was cut from six to four days per week, many merchants asked for refunds, but their requests received no response.

66.     On February 1, 2019 and, upon information and belief, continuously

thereafter, Enman posted and published on his Twitter page the following defamatory statement

concerning Plaintiffs:

Organizers likely made at least $103,333 from vendors losing money when the event was shortened from 6 to 4 days per week based on booth

costs. It's difficult to find out how many patrons paid and didn't get refunds, so number could be higher.

67.     On January 30, 2019 and, upon information and belief, continuously thereafter, Enman posted and published on his Twitter page the following defamatory statements concerning Plaintiffs:

> Winterfest scams vendors/patrons out of money;
>
> Winterfest invents worker to harass vendors/patrons; and
>
> Winterfest fabricates ANOTHER employee who is actually a Swedish model.

68.     On January 31, 2019, Enman retweeted and published the following false, defamatory statements originally tweeted and published by an individual using the name "Marc McDonald": "I'm biased by Trump's associations, I'm sure, but I feel like nobody has embraced scam capitalism quite like the russians have."

69.     The foregoing statements falsely imply that, *inter alia*: (a) Plaintiffs did not provide adequate electricity to Barsky and other vendors when, in reality, Barsky's use of illegal electric heaters caused the electric outage, her verbal assault of Millennial's electrician crew members with racial/ethnic slurs made them feel uncomfortable to reconnect the electricity in her chalet the first day, and all electrical problems were resolved before the opening of the event; (b) all Winterfest vendors dropped out of the event, even though virtually every vendor stayed until the end or almost the very end of the event without complaint or incident; (c) Winterfest boarded up shops for no reason, when the shop's electricity outlets were boarded up for safety reasons; (d) Plaintiffs were a threat to the personal safety and well-being of vendors; (e) Zane Friedman was Romanova and that Romanova is dishonest and duplicitous in her business dealings; (f) Plaintiffs were not entitled to reduce the number of days per week Winterfest would be held, while ignoring that the reduction in the number of days was caused by

defamatory statements about Winterfest and its organizers therefore driving away attendees; (g) Millennial profited at the expense of vendors, when, in fact, Millennial lost hundreds of thousands of dollars; and (h) Plaintiffs cheated and scammed vendors customers and are unethical business people.

70.   The above statements constitute defamation by implication.

71.   As a direct and proximate result of Defendants' intentional and malicious publication of false and defamatory statements, Plaintiffs have been and will continue to be damaged in an amount to be determined at trial, but believed to be in the sum of at least $10 million.

### Fourth Claim for Relief
### (Breach of the Covenant of Good Faith and Fair Dealing)

72.   Plaintiffs repeat and reallege all prior allegations set forth in this Complaint as if set forth herein verbatim.

73.   The Barsky Agreement, entered into between Plaintiff Millennial and Defendant Barsky, contained the implied covenant of good faith and fair dealing.

74.   Millennial has fully performed under the Barsky Agreement.

75.   Defendant Barsky breached said covenant when, *inter alia*, she made defamatory and negative comments to the press and other individuals regarding Winterfest and Plaintiffs, which deprived Millennial of the right to receive the benefits of the Barsky Agreement.

76.   As a result of Defendant Barsky's breach of the implied covenant of good faith and fair dealing contained in the Barsky Agreement, Plaintiffs have been damaged in an amount to be determined at trial, but believed to be in the sum of at least $10 million.

### Fifth Claim for Relief
#### (Tortious Interference with Contract)

77.     Plaintiffs repeat and reallege all prior allegations set forth in this Complaint as if set forth herein verbatim.

78.     A valid contract existed between Millennial and the Non-Party Licensors, in the form of the Winterfest Agreement.

79.     Upon information and belief, Defendants had knowledge of the Winterfest Agreement.

80.     By making and publishing the false and defamatory statements set forth above in this Complaint, Defendants caused the Non-Party Licensors to breach the Winterfest Agreement.

81.     Defendants intentionally procured the Non-Party Licensors' breach of the Winterfest Agreement without justification.

82.     By their statements and conduct relating to Millennial and Winterfest, Defendants tortiously interfered with the Winterfest Agreement between Millennial and Non-Party Licensors, as well as agreements with other third-party vendors, contractors, and suppliers.

83.     As a result of Defendants' publication of defamatory statements and misconduct, the Non-Party Licensors breached the Winterfest Agreement, which has now been terminated, and the possibility of Plaintiffs' future dealings with the Non-Party Licensors eliminated.

84.     Accordingly, Plaintiffs have been damaged in an amount to be determined at trial, but believed to be in the sum of at least $10 million.

### Sixth Claim for Relief
#### (Permanent Mandatory Injunction and Permanent Injunction)

85.     Plaintiffs repeat and reallege all prior allegations set forth in this Complaint as if set forth herein verbatim.

86. Plaintiffs seek a permanent mandatory injunction directing all Defendants to remove all statements each one has made regarding Plaintiffs that is found to be defamatory from any website, social media platform, or any location where they may exist over which such Defendant or Defendants has custody or control, and a permanent injunction barring all Defendants from making any further defamatory comments concerning Plaintiffs.

87. Plaintiffs have a likelihood of success on the merits because there can be no dispute that the statements set forth above constitute defamation *per se*, as they were published by Defendants to third parties without Plaintiffs' permission, the publishing of these statements constituted fault as judged by, at a minimum, a negligence standard, and said statements exposed Plaintiffs to, *inter alia*, public contempt, ridicule, aversion, or disgrace, and injured Plaintiffs in their business, trade or profession. In the alternative, these statements constituted defamation by implication, as these statements gave rise to false suggestions, impressions and implications with respect to which libelous intendment would naturally be given to them.

88. Additionally, the statements published by Defendant Barsky undoubtedly breached the implied covenant of good faith and fair dealing in the Barsky Agreement, as her defamatory comments to the press and other individuals regarding both Winterfest and Plaintiffs themselves deprived Millennial of the benefit of its bargain with Defendant Barsky, and worked to the detriment of Winterfest overall.

89. Moreover, Defendants' defamatory comments caused Plaintiffs' relationship with, and its Winterfest Agreement with, Non-Party Licensors to fall apart.

90. Given that monetary damages alone cannot make Plaintiffs whole for the reputational and professional injury that they continue to suffer as a result of Defendants' defamatory comments, which are still posted and which can be easily found online, no other

adequate remedy at law exists other than injunctive relief directing Defendants to remove all such statements and barring Defendants from making any further defamatory comments.

91.     A balancing of the equities tips in Plaintiffs' favor, as it entered into both the Winterfest Agreement and the Barsky Agreement (along with license agreements with additional Winterfest vendors) in good faith, provided a unique holiday attraction to Winterfest visitors, and yet was subject to professional and reputational injury due to Defendants' defamatory comments.

92.     As such, Plaintiffs are entitled to a permanent mandatory injunction and permanent injunction.

**WHEREFORE**, Plaintiffs respectfully demand judgment as follows:

1.     On the First Claim for Relief, damages in an amount to be determined at trial but believed to be in the sum of at least $10,000,000.00.

2.     On the Second Claim for Relief, damages in an amount to be determined at trial but believed to be in the sum of at least $10,000,000.00.

3.     On the Third Claim for Relief, damages in an amount to be determined at trial but believed to be in the sum of at least $10,000,000.00.

4.     On the Fourth Claim for Relief, damages in an amount to be determined at trial but believed to be in the sum of at least $10,000,000.00.

5.     On the Fifth Claim for Relief, damages in an amount to be determined at trial but believed to be in the sum of at least $10,000,000.00.

6.     On the Sixth Claim for Relief, an order and judgment granting Plaintiffs (i) a permanent mandatory injunction directing all Defendants to remove or cause to be removed all statements each and every one has made regarding Plaintiffs that is found to be defamatory from any website, social media platform, or other location, where they may exist, and (ii) a permanent injunction barring all Defendants from making any further defamatory comments concering Plaintiffs.

7.     On all Claims for Relief, such other and further relief as the Court deems just and proper, including interest.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury as to all issues so triable in this action.

Dated: White Plains, New York
       November 29, 2019

**CUDDY & FEDER LLP**
*Attorneys for Plaintiffs*
445 Hamilton Avenue, 14th Floor
White Plains, New York 10601
(914) 761-1300

By:   __/s/ Joshua E. Kimerling_____
      Joshua E. Kimerling (JK0053)